LOCKHART ET AL., APPELLEES, *v.* AMERICAN RESERVE INSURANCE CO., APPELLANT.

(No. 42899—Decided June 4, 1981.)

*Mr. Douglas M. Haynes,* for appellees.

*Mr. Daniel J. Klonowski,* for appellant.

Day, J. This is . an appeal by defendant-appellant, American Reserve Insurance Co. (defendant), from a judgment of the Cuyahoga County Common Pleas Court awarding $12,500 to plaintiff-appellee, Herbert D. Lockhart (plaintiff), under terms of his insurance coverage with defendant.

The judgment is reversed and the case dismissed.

Plaintiff was injured and his motorcycle destroyed on May 15, 1977, when he was struck at E. 93rd Street and Gibson Avenue by a car driven by an uninsured motorist. Plaintiff filed a claim with defendant insurance company. After plaintiff heard nothing from the company for some time he filed suit in common pleas court.

Defendant pointed out that the insurance policy contained a mandatory arbitration clause.[1] A panel was chosen pursuant to the clause and met in January 1980. Apparently the arbitrators found the uninsured motorist negligent and made an award. From a letter written by the chairman of the panel to the parties' attorneys (Exhibit C) it is clear that a unanimous decision was written and signed but not physically delivered to the parties. The parties seem to agree that the amount of that award was $6,000.[2]

Subsequently, at the request of plaintiff's attorney who "had learned of the amount to be awarded to his client" (Exhibit C), the panel was reconvened in May 1980. The source of the leak does not appear in the record. However, during oral argument counsel for defendant conceded that he called the chairman of the panel, learned of the award and immediately notified the plaintiff's attorney.

On May 6 the same panel of arbitrators with one dissent, awarded $12,500 to plaintiff and $2,000 to his wife.

The common pleas court retained jurisdiction on plaintiff's original suit while the arbitration process adopted in the insurance policy was pursued. At a pre-trial hearing in common pleas court subsequent to issuance of the second award, the court asked each party to file a motion for summary judgment upon which it would base its findings. The court granted summary judgment for the plaintiff for $12,500 and for defendant and against plaintiff on the $2,000 award to his wife.

From this judgment defendant appeals, assigning one error:

---

[1] "If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile or motorcycle because of bodily injury to the insured, or do not agree as to the amount payable hereunder then each party shall, upon written demand of either, select a competent and disinterested arbitrator. The two arbitrators so named shall select a third arbitrator, or if unable to agree thereon within 30 days, then upon request of the insured or the company such third arbitrator shall be selected by a judge of a court of record in the county and state in which such arbitration is pending. The arbitrators shall then hear and determine the question or questions so in dispute, and the decision in writing of any two arbitrators shall be binding upon the insured and the company, each of whom shall pay his or its chosen arbitrator and shall bear equally the expense of the third arbitrator and all other expenses of the arbitration. Unless the parties otherwise agree, the arbitration shall be conducted in the county and state in which the insured resides and in accordance with the usual rules governing procedure and admission of evidence in courts of law."

[2] Both mention $6,000 in their appeal briefs. Defendant includes that figure in its motion for summary judgment in the trial court. The amount of the initial award is not consequential for this appeal. What is of consequence is that an initial award was completed unless there was no delivery, constructive or otherwise.

"*Assignment of Error No. I:*

"The trial court erred when it rendered summary judgment in favor of appellees for Twelve Thousand Five Hundred Dollars ($12,500.00) when pursuant to an arbitration provision in an insurance contract a three person arbitration panel chosen by the parties rendered a unanimous and binding written decision in favor of appellees for Six Thousand Dollars ($6,000.00)."

For reasons adduced below the assignment is well taken.

I

R.C. Chapter 2711 is the Ohio statute governing arbitrations. R.C. 2711.01*[3] provides:

"A provision in any written contract * * * to settle by arbitration a controversy thereafter arising out of such contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Agreements to arbitrate can be enforced in the court of common pleas having jurisdiction of the party failing to perform.[4]

And when it appears in "any suit or proceeding" that the issue is arbitrable under an agreement in writing, the court "in which such suit is pending" is required to stay the proceeding upon the application of a party until the arbitration is had.[5] A gap in the procedure for appointing an arbitrator can be filled by common pleas court also on application of a party.[6]

Once an arbitration is completed it is apparent that a court which has stayed or ordered enforcement of the agreement to arbitrate has no jurisdiction except to confirm, vacate, modify, or enforce the award and only on the terms provided by statute, *i.e.*, R.C. 2711.09 and R.C. 2711.12 (confirm and enter judgment); R.C. 2711.11 (modify); R.C. 2711.10* and 2711.13* (vacate); or R.C. 2711.14 (enforce the award).

These special statutory sections provide the only procedures for post award attack or support of an arbitration decision. However, an appeal may be taken "from an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding or from judgment entered upon an award."[7] But the review is confined to the order. The original arbitration proceedings are not reviewable.[8]

The statute requires that the award be in writing and signed by a majority of the arbitrators and a "true copy of such award" delivered to each of the parties.[9]

II

The agreement to submit to arbitration describes the issues and defines the perimeters of the arbitration tribunal's powers with respect to them. When the submitted issues are decided, the arbitrators' powers expire.[10] Thus, a second

---

[3] An asterisk next to a code reference indicates that the section has been amended and the new version as it appears in the supplement is intended.

[4] R.C. 2711.03*.

[5] R.C. 2711.02.

[6] R.C. 2711.04.

[7] R.C. 2711.15.

[8] See *Moore* v. *Boyer* (1884), 42 Ohio St. 312, 313; cf. the dictum in *State, ex rel. Adams,* v. *Gusweiler* (1972), 30 Ohio St. 2d 326, 328 [59 O.O.2d 387].

[9] R.C. 2711.08*.

[10] See *Citizens Bldg. of West Palm Beach, Inc.,* v. *Western Union Tel. Co.* (C.A. 5, 1941), 120 F. 2d 982, 984:

"[A]rbitrators are appointees with but a single duty, and * * * the performance of that duty terminates their authority. When an arbitral board renders a final award, its powers and duties under the submission are terminated. Its authority is not a continuing one, and, after its final decision is announced, it is powerless to modify or revoke it or to make a new award upon the same issues."

award on a single, circumscribed submission is a nullity, cf. *Bayne* v. *Morris* (1863), 68 U.S. (1Wall.) 97, 99.

### III

In the present case it is established by a letter from the chairman of the arbitration panel to the parties' attorneys[11] that a first (original) award was reduced to writing and signed. It is clear that no "true copy of such award" was ever *physically* "delivered to each of the parties in interest" nor included in the record.

Whether the failure to physically deliver can be cured by constructive delivery without violating the statute, whether there was constructive delivery, what consequences follow flawed delivery and the remedy under the circumstances of this case are central to this appeal.

### IV

Once a decision was reached in this case, reduced to writing and signed by at least a majority of the panel, the arbitrators' powers were extinguished unless there was a failure to deliver which preserved their authority and thus allowed a revamping of the original. Under ordinary circumstances it might be defensible to argue that prior to the announcement and the actual delivery a change of arbitrators' minds could be reflected in a revamped first award because finality had never been achieved.

But the circumstances here are not ordinary. The facts show that. For the change in the original award before *literal* delivery was stimulated by the defendant's counsel's unilateral communication with the chairman of the arbitration panel. And when the chairman revealed the original decision, defendant's counsel immediately telephoned the information to the plaintiff's lawyer who asked for reconsideration.[12] Reconsideration was granted and a second award issued with one dissenting arbitrator. After requesting motions for summary judgment from each party, the trial court granted summary judgment for the plaintiff and issued its own award — the third in the series.

This repetition is necessary to highlight the procedural aberrancy in this case. Every action in it subsequent to the reduction to writing and signing of the original award was without legal foundation.

A party dissatisfied with an arbitration award has only that recourse to the court of common pleas provided by statute. And that effort can be successful only if one of the statutory grounds for vacation[13] or modification[14] is

---

[11] Exhibit "C": "Although the award had been reduced to writing and signed by the three arbitrators, the proper cover letter to counsel was not ready for mailing until the 24th of January, 1980 * * *."

[12] Exhibit "C."

[13] R.C. 2711.10* reads:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"(A) The award was procured by corruption, fraud, or undue means.

"(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

"(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may direct a rehearing by the arbitrators."

[14] R.C. 2711.11 reads:

"In any of the following cases, the court of

demonstrated. A second effort with the same arbitrators may be had only if any time limits imposed by the submission agreement have not expired.[15]

The remedies for flaws in arbitration awards within the statutory purview are special and exclusive. If it is assumed, *arguendo,* that one or more of the faults contemplated by the statute marred the original award, the parties failed to invoke any of the statutory cures.

The first award was either incomplete or constructively delivered and, therefore, complete. In either event the second and third awards were nullities. This means that the status of the first award is still to be resolved.

That resolution could be accomplished logically by treating the first award as complete with the premature announcement. However, that disposition would undermine defensible reasons for physical delivery to the parties.

Literal receipt by the parties provides them with the rationale and detail of decision necessary to a procedurally appropriate challenge under the statute if there is to be one.

Moreover, the procedural tangle here illustrates the merit of simultaneous dispatch to the parties rather than unilateral exposition of the result. Both parties should be informed at or about the same time. Completion of the award is achieved with delivery and the conditions are set for further proceedings under the statute, if any. These procedural considerations are logically implicit in the admonition in R.C. 2711.08* that a "true copy of such award without delay shall be delivered to each of the parties in interest."

Accordingly, constructive delivery (even assuming that it exists in this case) is held invalid in order to avoid bypassing the legitimate objectives served by literal delivery.[16] Furthermore, so much that is improper has transpired, that all prior efforts at disposing of the case on the merits are set aside.[17] The trial court is directed to instruct the parties to begin the arbitration process anew and to conduct it according to the arbitration agreement and the relevant statutes as construed by this opinion.

One further procedural issue remains to be addressed.

## V

A passage in the arbitration clause of the policy provides that "the arbitration shall be conducted * * * in accordance with the usual rules governing procedure and admission of evidence in courts of law." Apparently spurred by this language the notion has been advanced in this case that arbitration proceedings should be governed by the Rules of Civil

---

common pleas in the county wherein an award was made in an arbitration proceeding shall make an order modifying or correcting the award upon the application of any party to the arbitration if:

"(A) There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

"(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

"(C) The award is imperfect in matter of form not affecting the merits of the controversy.

"The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

[15] R.C. 2711.10* (see final unlettered paragraph — footnote 13). The time factor is not involved in the present case. There is no time mentioned in the arbitration clause of the policy but no issue on that point has been raised.

[16] The effect of a failure of mail delivery is not in this case and is not decided.

[17] See App. R. 12(B).

Procedure and that a request for reconsideration of an award ought to be deemed analogous to a Civ. R. 59 motion for a new trial.

An arbitration mode equivalent to that in the Rules of Civil Procedure would destroy the benefits of private arbitration. For final and binding arbitration finds its principal virtue in circumvention of the complexities and delays inherent in court procedures. An intention to destroy that virtue will not be inferred from a statement which is only an hortatory adoption of the principle of fair process for an arbitration hearing.

## VI

Judgment is reversed and the cause is remanded for further proceedings in accordance with this opinion.

*Judgment reversed and cause remanded.*

PATTON, J., concurs.

PRYATEL, P.J., concurs in judgment only.

PRYATEL, P.J., concurring in the judgment only. I believe that the parties can require that the "arbitration shall be conducted * * * in accordance with the usual rules governing procedures and admission of evidence in courts of law." To me, such a requirement is not hortatory language.

Accordingly, I concur in the judgment only.