JOURNAL ENTRY AND OPINION
Appellant AFSCME, Local 100 ("Union"), appeals from an order of the trial court vacating an arbitration award which reinstated Mary Wingard's employment by the appellee City of Cleveland. The Union contends the trial court exceeded its authority in vacating the award and in denying the Union's motion for summary judgment and its application to affirm the award. We find merit to the appeal and reverse and enter judgment for the appellant.
An arbitration hearing was held between the City and the Union on July 16, 1997, regarding a grievance filed over the discharge of City employee, Mary Wingard, for allegedly falsifying a medical excuse. The arbitrator sustained the grievance and issued his decision on September 29, 1997, reinstating Wingard to work as a customer service representative for Cleveland Public Power with full back pay and benefits. The City filed its application to vacate the arbitration award on December 29, 1997, with the court of common pleas. The Union responded on January 22, 1998, by filing a motion to dismiss and/or for summary judgment with an application for an order confirming the arbitration award and request for oral argument.
On April 9, 1998, the common pleas court journalized its order without opinion or explanation granting the City's application to vacate the arbitration award, denying the Union's application and motions while directing the parties to "rehear this matter forthwith." On May 7, 1998, the court issued sua sponte a second journal entry purporting to "correct" the first journal entry which repeated the language in its first entry except to delete language directing the parties to rehear the matter. The Union filed a timely notice of appeal.
The Union and the City are parties to a collective bargaining agreement which covered the relevant time period. In this CBA, the parties agreed to: (1) a grievance procedure that includes final and binding arbitration; (2) a "just cause" standard for discipline and discharge actions; and (3) a due process procedure that the City must follow prior to initiating discipline. (CBA ¶¶ 6, 149-152, 153-164,). The hearing before the arbitrator disclosed the following evidence.
On August 9, 1996, Wingard had planned to take a couple of hours off work for a doctor's appointment to receive treatment for an injury covered under workers' compensation. She had advised her immediate supervisor of this appointment the day before. "When she arose that morning, [however,] one of her upper [dental] caps was loose, so she called in to report she would not get back to work until 11:00 a.m." (Award at 5). Wingard attempted to get her dental cap repaired, but was refused treatment due to an unpaid balance on her bill. The dentist's office secretary, however, agreed to provide Wingard with an excuse slip if Wingard could come back later for it, which Wingard did. Afterwards, Wingard went to treatment by her workers' compensation doctor who also provided Wingard with a doctor's excuse. Wingard then reported to work and gave her immediate supervisor the written dental office excuse. (Award at 5).
Thereafter, the City notified Wingard by letter that a predisciplinary conference had been "scheduled to discuss the reported incident matter of August 8, [sic] 1996 Documentation in which you are involved." The pre-disciplinary conference was held on August 15, 1996. On August 23, 1996, the City discharged Wingard for allegedly providing the City with an altered doctor's medical excuse for Wingard's absence from work on August 9, 1996. As a result of the City's actions, the Union filed a grievance on behalf of Wingard that was heard before the Arbitrator on July 16, 1997.
During the arbitration hearing, the arbitrator advised the parties that:
 [A]nything that has some relevance, as far as I can tell to the issue, I usually admit into the record. I then use it in accordance with its value. I have learned over the years pretty well what is reliable and significant, and what isn't. That will be done by me as I review the case. I will let it in if it seems to have some relevance and whatever weight it may be.
(Tr. at 5-6)
After an objection to hearsay by the Union during the City's presentation, the arbitrator stated that:
 [H]earsay I deal with all the time. I recognize what it is. There are all kinds of rules about it, being a former lawyer, but I allow hearsay. I just recognize what it is and go on.
(Tr. at 32)
Finally, at the conclusion of the City's presentation, when the City's representative offered her exhibits into evidence, the arbitrator stated "[n]o objections. They all have some relevance in one way or another. They will be admitted." (Tr. at 70). One of the City's exhibits admitted by the arbitrator included a written statement by a Sears Family Dental Center employee only known as "Connie" (the "Connie statement") on a document with "Family Dental Center" imprinted at the top. (Award at 3). The Union made no objections to the admittance of the documents based upon hearsay reasons.
On September 29, 1997, the arbitrator rendered his decision reinstating Wingard to work for the City with full back pay and benefits. In his decision, the arbitrator expressed three reasons underlying his findings that Wingard's "discharge was without just cause." First, he found that the pre-disciplinary notice violated the City's Civil Service Rule 9.20, which was provided to the arbitrator as City Exhibit 4, which the arbitrator paraphrased: "when any disciplinary action is contemplated, the employee shall be given oral or written notice of the action contemplated and an opportunity to respond." He found the City's notice in the instant case deficient because the notice "made no reference to the disciplinary action contemplated, did not describe the incident in question, and listed the wrong date," which meant that the grievant "didn't know what was coming up" because she "had worked all day on August 8 * * * [and] the word "documentation' in the notice [gave] * * * no clue as to what the conference might be about." (Award at 9).
Second, the arbitrator found that the City "fail[ed] to furnish the Union a copy of City Exhibit 3 [(the "Connie statement")] during the course of the Griefance [sic] procedure, as contemplated by the last sentence in paragraph 153 of the 1995 Contract." (Award at 10).
Finally, the arbitrator found that there was an "absence of any reliable evidence that the grievant was the one who concocted the Dental Center excuse form dated August 9, 1996. * * * The only evidence the City has offered to support its action is hearsay, and the Union has been deprived of any chance to cross-examine the source. Never in my career have I upheld discharge action based on evidence as unreliable and unconvincing as this." (Award at 10-11)
The common pleas court granted the City's application to vacate without opinion or explanation as to the reasons for vacating the award. This timely appeal ensued.
The Union's sole assignment of error states as follows:
 I. THE TRIAL COURT ERRED, AND THUS EXCEEDED ITS AUTHORITY UNDER R.C. CHAPTER 2711 AND OHIO CASE LAW, IN VACATING THE ARBITRATION AWARD AND ORDERING THE MATTER TO BE REHEARD AND IN DENYING APPELLANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT AND APPLICATION FOR ORDER CONFIRMING THE ARBITRATION AWARD.
This Court has recognized "that the jurisdiction of courts in the area of arbitration and arbitration awards is limited."Cleveland Police Patrolmen's Assn. v. City of Cleveland (1995),107 Ohio App.3d 248, 255. Thus, R.C. 2711.10 states that:
 [In] any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
 (A) The award was procured by corruption, fraud, or undue means.
 (B) There was evidence of partiality or corruption on the part of the arbitrators, or any of them.
 (C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may direct a rehearing by the arbitrators.
"Ohio's statutory scheme in R.C. 2711.10 thus limits judicial review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority."Goodyear Tire Rubber Co. v. Local Union No. 200 (1975), 42 Ohio St.2d 516,520.
Were a court not to limit its inquiry, the court's decision "would defeat the bargain made by the parties and would defeat as well the strong public policy favoring private settlement or grievance disputes arising from the collective bargaining agreements." Goodyear, supra, at 520. The court in Lynch v.Halcomb (1984), 16 Ohio App.3d 223, 224, defined our standard of review of the trial court's decision as follows:
 R.C. 2711.10 and 2711.11 describe the circumstances under which the common pleas court may vacate, (R.C. 2711.10) or modify (R.C. 2711.11) an arbitration award. Such award may not be modified or vacated based on the merits of the dispute unless there is evidence of fraud, corruption, or material mistake. See, also, Goodyear v. Local Union No. 200 (1975), 42 Ohio St.2d 516, 330 N.E.2d 703 [71 O.O.2d 509] certiorari denied (1975), 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 303. On appellate review, this court is confined to an evaluation of the order issued by the court of common pleas pursuant to R.C. Chapter 2711; we also may not pass upon the substantive merits of the arbitration award absent evidence of material mistake or extensive impropriety. See, Lockhart v. American Res. Co. (1981), 2 Ohio App.3d 99, 440 N.E.2d 1219.
See, also, City of Cleveland v. Fraternal Order of Police Lodge No.8, (1991), 76 Ohio App.3d 755, 758. Against this background of limited review, we will address the issues raised by the parties.
We initially find that the trial court did not err in modifying its initial order in which it vacated the arbitration award and remanded the matter for rehearing. The trial court subsequently deleted the rehearing language. Since the trial court order remanded the matter for a rehearing, at that point it was not a final appealable order. Cleveland Police Patrolmen's Associationv. Cleveland (1998), 82 Ohio St.3d 393; Stewart v. MidwesternIndemn. Co. (1989), 45 Ohio St.3d 124. Therefore it was free to modify its order. We go on to address the substance of the trial court's action vacating the arbitration award.
Since the trial court did not explain its reasons for vacating the award, we will address the various arguments raised in the City's application. The City argued that the arbitrator engaged in misconduct which prejudiced the rights of the City by sustaining the Union's objection to hearsay evidence which was set forth in a post-hearing brief. The City contends that by sustaining the objection, the arbitrator failed "to consider a critical issue as presented at the hearing." The City also argued that the arbitrator failed to consider witness credibility in reaching his conclusion; and that the arbitrator exceeded his authority by making a legal determination regarding the lack of due process afforded to the grievant and added language to the parties' CBA. We find no merit to these arguments.
Regarding the hearsay evidence, the arbitrator's award does not mention that it sustained any objection to the hearsay. The hearsay evidence consisted of a letter from an employee at the Dental Clinic named Connie, who states in the letter that the grievant did not appear at the Clinic on the stated date. The arbitrator did not sustain any objection to this hearsay evidence but merely did not give the letter much weight as it was hearsay, and also because it was the only evidence the City had to disprove that the grievant did not visit the Clinic on that date, contrary to the grievant's testimony. The City's argument that the hearsay evidence was not considered, goes to admissibility. Here, as stated, the arbitrator clearly admitted it, but did not find it reliable. The arbitrator informed the parties at the outset of the hearing that he admitted all evidence that he feels is relevant at the time and "I then use it in accordance with its value. I have learned over the years pretty well what is reliable and significant, and what isn't." (Tr. at 5). He later on stated that he allows hearsay (Tr. at 32) and when the exhibits were offered into evidence he accepted them all stating "They all have some relevance in one way or another." Basically the arbitrator did what he initially told the parties. That is, everything relevant is admitted and given value according to its reliability and significance. The arbitrator simply did not find the letter reliable. This is consistent with the fact that rules of evidence are relaxed in an arbitration proceeding. Alexander v. Gardner-DenverCo. (1974), 415 U.S. 36, 57-58; Youghiogheny v. Ohio CoalCo. (1986), 23 Ohio St.3d 39, 44.
The arbitrator also considered the credibility of the witnesses in making his determination of whether or not the City violated the CBA when it discharged Wingard. The City argued that "[t]he record clearly showed that the testimony of the City's witnesses was more reliable and more credible than that of the Union's witnesses. (App. to Vacate at 9). Witness credibility, however, is solely determined by the arbitrator and not the common pleas court. See Motor Wheel Corp. v. Goodyear Tire Rubber Co.
(1994). 98 Ohio App.3d 45, 52; Sparks v. Bennett (1992), 78 Ohio App.3d 448,450. In his decision, the arbitrator reviewed and referred to the testimony of City's witnesses, but the arbitrator found that the City's evidence presented through their testimony alone did not support the City's action to discharge Wingard. (Award at 2-4. 11). "The fact that the common pleas court may have come to a different conclusion [regarding the credibility of the witnesses] than did the arbitrator is immaterial." Motor Wheel, supra, at 52. The trial court would have gone beyond the scope of its limited review to the extent it may have judged credibility.
Nor do we find that the arbitrator exceeded his authority by adding contractual language to the CBA or making a determination regarding the lack of due process afforded Wingard. Rather, the arbitrator based his findings on the due process agreed upon by the parties and his award gave effect to it. (Award at 9-10).
The parties' CBA limited arbitrator's authority in ¶ 161 50 that he or she cannot add, subtract or modify language in the CBA, pass upon issues governed by law, or make an award in conflict with law. Before the trial court, the City argued that the arbitrator violated these limitations when he found the pre-disciplinary notice insufficient. (App. to Vacate at 11, 13). On the contrary, the arbitrator interpreted and applied the parties' agreed-upon due process procedure as found in the CBA and the City's Civil Service Rules, which provided more due process than that articulated in the Loudermill decision by the U.S. Supreme Court. See Cleveland Bd.of Educ. v. Loudermill (1984), 470 U.S. 532. ¶ 149 of the CBA states that "[w] whenever the City determines that an employee may be subject to discipline, a pre-disciplinary conference will be scheduled to afford the employee an opportunity to offer an explanation of the alleged conduct, inclusive of oral and/or written testimony. (CBA ¶ 55). The City's Civil Service Rule 9.20 submitted as an exhibit by the City to the arbitrator at the hearing, states that:
 (A) When any disciplinary action is contemplated as to an officer or employee in the classified service, the appointing authority or the secretary of a board of commission in the City service, shall give such officer or employee oral or written notice of the action contemplated and an opportunity to respond.
In his decision, the arbitrator specifically reviewed and cited this Rule when he found that the notice given to the grievant was insufficient. (Award at 9). In finding that the City failed to give adequate notice to Wingard, thereby violating the parties' agreement, the arbitrator was again within the prerogatives entrusted to him by the parties. Therefore, such ruling and interpretation did not conflict with the law, add additional terms to the parties' agreement, or impermissibly find on an issue governed by law. Consequently, we find that the trial court abused its discretion in not giving effect to the arbitrator's decision.
Appellant's sole assignment of error is sustained.
Reversed; judgment is hereby entered for the appellant affirming the arbitration award.
It is ordered that appellant recover of appellee its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ROCCO, J., and BLACKMON, J., CONCUR.
 ___________________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE